IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-2996-JLK

WAYNE McDONALD,

      Plaintiff,

v.

AMBER MILLER, in her official capacity as the Mayor's Press Secretary and in her
individual capacity,
MICHAEL HANCOCK, in his official capacity as Mayor and in his individual capacity,
and
CITY AND COUNTY OF DENVER,

      Defendants.

_____

ORDER ON DEFENDANTS' MOTION TO DISMISS (Doc. 14)

_____

KANE, J.

      Former Denver mayoral political appointee Wayne McDonald filed suit after being

accused of sexually harassing a Denver police officer and fired as a result.  The appointee

claims the allegations were false and that his termination, which occurred before any

opportunity for a hearing to clear his name, constituted a breach of his employment contract

and violated his due process rights under the Colorado state and federal constitutions.

Plaintiff also asserts a state law privacy claim under the Colorado Open Records Act

premised on the disclosure of the sexual harassment allegations to the press. Defendants

move to dismiss.  I grant the Motion.

      I have original jurisdiction over this matter based on Plaintiff's 42 U.S.C. § 1983

constitutional due process claim under 28 U.S.C. § 1331.  For purposes of the instant

Motion, I exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28

U.S.C. § 1367(c)(3).

Discussion.[1]

During the time relevant to his claims and until his termination in May or June of

2012, Plaintiff Wayne McDonald served as a paid advisor and projects manager for Denver

mayor Michael Hancock. Denver police officer Lesli Branch Wise was a member of the

Mayor's security detail.  Am. Compl. ¶ 21.  As McDonald traveled around the city with

Hancock, he "would see and interact with Wise."  Am. Compl. ¶ 23.  McDonald

acknowledges he and Wise "engaged in conversations ranging from workplace issues,

sporting event, and personal matters," on the phone and in person, over a period of time

from July 2011 to March 2012. *Id.* ¶¶ 23-34.

On May 18, 2012, McDonald was called to a meeting where he was told Wise had

accused him of sexual harassment.  Am. Compl. ¶ 37-38.  He denied the allegation (*id.* ¶

39) and agreed to cooperate in an investigation by Mountain Sates Employer's Council (¶¶

40-43).  Three days later, the Mayor's deputy chief of staff, Stephanie O'Malley, asked

McDonald to meet her at a local restaurant.  There, O'Malley and Denver City Attorney

---

[1] I note that McDonald originally named the accusing Denver police officer, Lesli Branch Wise, as a Defendant in this lawsuit, asserting a claim for defamation against her.  I dismissed that claim in a separate written Order dated May 1, 2013.  *See* Order (Doc. 21).  The remaining Defendants are Denver Mayor Michael Hancock, the Mayor's press secretary, Amber Miller, and the City and County of Denver itself.

Doug Friednash referred to the sexual harassment allegations and told McDonald that based on them, he would have the option of resigning his position or being fired.  *Id.* at ¶¶ 45-46. McDonald again denied he sexually harassed Wise and asked for an opportunity to defend against the claims, stating an investigation would reveal that Wise had "lied." ¶¶ 47-48. Instead, Friednash told McDonald that he was fired.  ¶ 49.  McDonald received nothing in writing about the allegations and was given no hearing or other opportunity to address the accusations until several months later, when he appealed the denial of his claim for unemployment benefits.  Am. Compl. ¶¶ 51-53, 69-76.

In mid-June 2012, news reporters began contacting McDonald requesting interviews regarding his termination from the Mayor's office indicating, to McDonald, that they had "heard rumors he was fired for sexual harassment."  Am. Compl. ¶ 54. On June 20, through his attorney, McDonald notified the City Attorney's Office of certain Colorado Open Records Act (CORA) requests for information that had been made by the press seeking information regarding his termination, and informed the City Attorney's Office that he opposed the release of any and all protected information. ¶ 55.  Notwithstanding this request, McDonald claims that on June 21, 2012, the Mayor's press secretary – Defendant Amber Miller – "sent email(s) and/or other forms of communications to news reporters informing them that McDonald was fired because of 'serious allegations of misconduct.'" Am. Compl. ¶ 56.  According to McDonald, the *Denver Post* and other local news media outlets then published stories "stating McDonald was fired because of 'serious allegations

of misconduct'" and, according to McDonald, specifying that the allegations "concern[ed] a complaint filed by an unnamed female Denver police officer that McDonald sexually harassed her."  ¶ 57.

McDonald filed the instant lawsuit in federal court on November 14, 2012, naming Ms. Wise, Mayor Hancock, Amber Miller, and the City and County of Denver as Defendants.  The operative Amended Complaint articulates three claims for relief against the remaining Defendants: (1) a claim against Amber Miller for "Violation of the Colorado Open Records Act," C.R.S. 24-72-204 *et seq*.; (2) a claim for breach of employment contract against Mayor Hancock; and (3) a claim for "Violation of Due Process" against the City and against Hancock and Miller in both their "official" and "individual" capacities. As summarized below, the state causes of action fail on several grounds to state viable claims for relief, and the due process claim is cluttered with erroneous and superfluous concepts and buzzwords that confuse the issues and render meaningful analysis difficult. Once cleared of the non-germane, the due process claim nevertheless fails to state a claim because the statements attributed to the Mayor and his staff are not, under the facts alleged, defamatory.

*Plaintiff's claims generally*

To distill the essence of McDonald's claims in this case, I must separate factual allegations from conclusory assertions and excise legal theories that hold no water.[2]  Once

---

[2]     *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) *and Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to

cleared of its detritus, only a single claim under 42 U.S.C. § 1983 merits any serious scrutiny.

The obvious issues first, in summary form:

•     <u>Plaintiff's CORA Claim</u>.  As Defendants point out in their Motion to Dismiss, there is no private right of action under the Colorado Open Records Act.  *See Shields v. Shetler*, 682 F. Supp. 1172, 1176 (D. Colo. 1988).  The exclusive remedy for a violation of the Act is criminal, in the form of a "fine of not more than one hundred dollars, or by imprisonment in the county jail for not more than ninety days, or [both]."  C.R.S. 24-72-206.

    In response to this truism, McDonald recasts the claim in terms of the "legitimate expectation" of privacy analysis for discovery disclosures under *Martinelli v. District Court In and For the City and County of Denver*, 612 P.2d 1083, 1091-1094 (Colo. 1980).  *See* Br. (Doc. 18) at 17 ("[e]ssentially, McDonald is asserting a right to privacy in his confidential personnel records and basing this privacy right . . . on the disclosure directions contained in [CORA]").  If that analysis fails to fly, McDonald asks for leave to amend his complaint a second time

---

state a claim under Rule 8(a) pleading standards, plaintiff's complaint is reviewed for a determination of whether it "'contains enough facts to state . . . claim[s] that [are] plausible on [their] face.'" *See Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)(quoting *Twombly*, 550 U.S. at 570 and *Iqbal*). "Facts," under the *Twombly* standard, need not be "detailed," but must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly* at 555. The plausibility requirement serves "to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success." *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008).

"to bring these concerns under the Fourteenth Amendment or other appropriate legal

theory." Pl's Resp. to Mots. to Dismiss (Doc. 18) at 18-19 of 41.

The request is DENIED. Plaintiff has already asserted a Fourteenth

Amendment due process claim premised on allegations that Defendants "created and

disseminated a false and defamatory impression about McDonald [by making the

disclosures McDonald claims violated Open Records Act prohibitions] in

connection with the termination of [his] employment" (Am. Compl ¶ 109) and

amendment to add another Fourteenth Amendment claim to that effect would be

redundant. Moreover, a *Martinelli*-based privacy interest is recognized in the

context of discovery and relates to the disclosure of actual personnel files, neither of

which applies or is germane to the facts alleged in this case. *See Denver*

*Policemen's Protective Ass'n v. Lichtenstein*, 660 F.2d 432, 435 (10th Cir. 1981).[3]

Accordingly, the CORA claim is DISMISSED, and because any reasonable

inquiry by counsel before signing the pleadings in this case would have revealed the

---

[3]      In *Lichtenstein*, the Tenth Circuit adopted the *Martinelli* test for determining whether
information contained in personnel files is of such a highly personal or sensitive nature that it falls
within the zone of constitutionally recognized confidentiality.  In applying the test, the court must
consider (1) if the party asserting the right has a legitimate expectation of privacy, (2) if disclosure
serves a compelling state interest, and (3) if disclosure can be made in the least intrusive manner.
660 F.2d at 435.  Only data of a "highly personal or sensitive nature" may fall within the zone of
confidentiality.  *Id.*  The instant case did not involve personnel files or their disclosure, and the
information released – that a public employee like McDonald was terminated amid "allegations of
serious misconduct" – is not sufficiently personal or sensitive to create a constitutional expectation
of privacy in any event. *See Flanagan v. Munger*, 890 F.2d 1557, 1571 (10th Cir. 1989)("We are
unwilling to hold that a reprimand of a public employee [for off-duty conduct believed to
undermine public confidence in police department] is of a highly personal nature and creates a
constitutional expectation of privacy.")

lack of any private right of action under C.R.S. 24-72-204, counsel is put on notice

that her actions in signing the Complaint and Amended Complaint to include the

claim may be subject to sanctions under Fed. R. Civ. P. Rule 11.

- <u>Breach of Contract Claim</u>.  With respect to the breach of contract claim,

McDonald's complaint fails to meet the *Iqbal/Twombly* plausibility standard for

pleading.  The complaint makes only conclusory allegations that McDonald had a

valid and binding employment contract with the City and fails to allege any facts to

support the contention that such a contract was breached.  Irrespective of these

deficiencies, McDonald fails to state a claim for breach of contract in the complaint.

In Colorado, local government employees are at-will employees who "hold

their posts at the pleasure of the proper local government authorities and can be

dismissed without cause, in the absence of restrictions or limitations provided by

law." *Darr v. Town of Telluride, Colo*., 495 F.3d 1243, 1252 (10th Cir. 2007).  The

Denver City Charter specifically provides that "up to fifty employees may be

appointed to serve at the pleasure of the Mayor."  Denver City Charter §9.1.1(E)(iv).

McDonald concedes he received an "appointment letter" from the Mayor on July 11,

2011, "designat[ing] and appoint[ing]" him to serve "at the pleasure of the Special

Assistant to the Mayor effective July 18, 2011."  Am. Compl. ¶ 15.

Notwithstanding this clear language, McDonald contends the letter evinces a

binding contract of employment because it memorialized the Mayor's  "promise" to

"appoint McDonald to a City job" if McDonald agreed to "resign his private sector

corporate executive job, forego other employment opportunities, and work for the City." Am. Compl. ¶ 96. McDonald offers no legal analysis or authority to support his contention that the letter was anything more than a solemnization of the power available to Hancock under the Denver City Charter. The allegations are insufficient to overcome the clear language and import of either the Charter or the common law concept of "at-will appointment" discussed in *Darr*.

Alternatively, McDonald alleges Hancock made an oral promise to employ him for the duration of Hancock's term as Mayor. Such a promise does not, without more, evince a binding contract and would be void under the statute of frauds in any event. The Mayor's term in office is by definition under Colorado law for more than one year, therefore any contract "for the duration of his term" would have to be in writing to be valid. *See* Colo. Rev. Stat. §38-10-124(1)(a).

McDonald's allegations fail, as a matter of law, to give rise to a binding contract of employment that could have been breached by the Mayor's actions in firing him at will. The breach of contract claim is DISMISSED.

- The violation of rights "guaranteed by 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, and Article II of the Colorado Constitution" (Am. Compl. ¶ 116)

I move on to McDonald's final claim for relief, which he characterizes as seeking relief for the violation of rights "guaranteed by 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, and Article II of the Colorado Constitution." Am. Compl. ¶ 116. The characterization is overbroad and

misleading to the extent it is suggestive of three theories of relief.

Section 1983 "guarantees" no rights. *Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2992)(§ 1983 "'is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred'")(quoting *Graham v. Connor*, 490 U.S. 386, 393-94 (1989)).  Colorado law, moreover, contains no statutory equivalent of 42 U.S.C. § 1983 and there is no implied private right of action to enforce due process rights under Article II of the Colorado Constitution.  *See Walker v. Board of Trustees, Regional Transp. Dist.*, 76 F. Supp.2d 1105, 1112 (D. Colo. 1999).  Accordingly, McDonald has <u>one</u> claim, brought under <u>42 U.S.C. § 1983</u>, for the alleged deprivation of his liberty/privacy interests under the Fourteenth Amendment of the United States Constitution.

• <u>"Acting 'under color of law.'</u>  Plaintiff's Complaint and Amended Complaint are replete with references to Defendants' actions – whether in disclosing confidential information, making defamatory statements, or breaching his employment contract – being taken "under color of law." The only claim to which action "under color of [state] law" is relevant is McDonald's federal claim under § 1983, and the repeated incantations of it elsewhere are confusing.

Section 1983 provides individuals a remedy against any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws  . . . ." 42

U.S.C. § 1983.  Municipalities, by definition, act "under color of [law]," so the allegation is superfluous as to McDonald's claim against the City. The allegation is also superfluous when it is used to describe actions taken by Miller or Hancock in their "official" capacities.  Claims against municipal officials acting in their "official" capacities are the same as an action against the municipality itself.  *See Watson v. City of Kansas City*, 857 F.2d 690, 695 (10th Cir.1988)(suits against a municipality and suits against municipal officials acting in their "official" capacities are the same). As a result, there is no need for the "under color of state law" allegations vis á vis the "official" acts of Hancock or Miller.

Finally, there is no specific due process violation alleged against Defendant Miller in her individual capacity.  McDonald's allegations against Miller are for her disclosure, in her official capacity as the Mayor's press secretary, of allegedly private information to the press – the CORA/invasion of privacy claim.  McDonald asserts no allegations against Miller related to the decision to fire him or to deny him any constitutionally required name-clearing hearing.  Because McDonald alleges no "affirmative link" between the alleged constitutional due process violation and Ms. Miller, she is not a proper Defendant to the § 1983 claim in her official or individual capacity as the Mayor's press secretary.  *See Silver v. Primero Reorganized School Dist.*, 619 F. Supp.2d 1074, 1093 (D. Colo. 2007)(Krieger, J.)(citing *McKay v. Hammock*, 730 F.2d 1367, 1374 (10th Cir. 1984) and *Rizzo v. Goode*, 423 U.S. 362, 371 (1976)).

10

We are left, then, for purposes of McDonald's § 1983 claim, with one theory of relief – a violation of McDonald's Fourteenth Amendment due process rights – against the City/i.e. the Mayor-in-his-official-capacity and the Mayor in his individual capacity.  I consider that claim under applicable *Iqbal/Twombly* pleading standards below.

*Plaintiff's § 1983 Claim.*

Section 1983 imposes civil liability upon persons who, "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects [another] . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution  . . . ."  42 U.S.C. § 1983.  "The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'"  *Baker v. McCollan*, 443 U.S. 137, 140 (1979).  If no constitutional right would be violated even if plaintiff's allegations were proven, then there is no necessity for further inquiries concerning individual defendants' qualified immunity from suit under *Anderson v. Creighton*, 483 U.S. 635 (1987), or, in the case of municipal liability, whether the acts complained of sound in respondeat superior or, as is necessary for liability to attach, are fairly attributed to the municipality itself under *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978).  *See Saucier v. Katz*, 533 U.S. 194, 200-201 (2001).

As an initial matter, the constitutional deprivation at issue in this case is Defendants' failure to provide McDonald with an adequate name-clearing hearing in connection with allegations of "serious misconduct" that led to his termination.  Because only the City or

11

City Defendants acting in their "official" capacities could have provided McDonald with such a hearing, Mayor Hancock in his "individual capacity" could not have denied McDonald due process and is therefore qualifiedly immune from suit. The question is whether the allegations in the Amended Complaint support a plausible inference that McDonald (1) was entitled to a constitutionally adequate name-clearing hearing and (2) that the City (i.e., the Mayor in his "official" capacity) failed to provide him one.

To invoke due process protections under the Fourteenth Amendment, a plaintiff's allegations must show he was "depriv[ed] of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972). While damage to one's reputation may be remediable under state law as an injury in tort, it is insufficient by itself to establish a constitutionally protected interest under the Fourteenth Amendment. *Paul v. Davis*, 424 U.S. 693, 701 (1976). In order to elevate an injury remediable under state tort law to one protected by the constitution, it must be paired with some additional, "more tangible," interest, such as employment or other protected property interest. *Id.*

The interest invoked by McDonald here is his "property and/or liberty interests in his good, name, reputation, honor and integrity," Am. Compl. ¶ 108, which McDonald claims were "infringed and violated with City officials and employees, including but not limited to Hancock . . . created and disseminated a false and defamatory impression about McDonald in connection with [his] termination . . . without providing McDonald a

hearing." *Id.* ¶ 109.  McDonald's allegations are premised squarely on the Tenth Circuit's decision in *Workman v. Jordan*, 32 F.3d 475, 480 (10th Cir.1994), which recognized a law enforcement officer's liberty interest in his good name and reputation in the context of his termination from the Weld County Sheriff's Department amid allegations of sexual harassment.

While the "additional interest" in *Workman* was a constitutional property interest in continued employment, that level of interest is not, as Defendants suggest, a prerequisite for triggering a liberty interest in an employment termination context.[4]  The *Davis* requirement that "reputational harm be entangled with 'some more tangible interests'" is met when any terminated plaintiff can show that his termination "at least aggravated his [reputational damage]."  *McGhee v. Draper*, 639 F.2d 639, 643 & n. 2 (10th Cir. 1981)(cited favorably in *Workman* at 480).  Accordingly, McDonald's § 1983 claim is not precluded simply because his employment was at-will or "at the pleasure" of the Mayor.  However, McDonald must still plead facts plausibly demonstrating an infringement or deprivation of this liberty interest by the government or government actor.

---

[4]      In *Workman*, the plaintiff law enforcement officer was specifically determined to have had a constitutionally protected property interest in his continued employment at the time of his termination, which interest was deemed to satisfy the *Davis* "more tangible interest" requirement. 32 F.3d at 479-80 (county policy providing employees could only be terminated "for cause" created a "state-defined [and therefore constitutionally protected] property interest in plaintiff's employment with the Sheriff's Department" which, when "affect[ed]" by the officer's accompanying reputation injury, gave rise to a protected "liberty interest" ).  Here, I have specifically determined McDonald could have no protected property interest in his continued employment by the Mayor, based on his own admission and Denver City Charter language unequivocally stating he was employed in an appointed position at-will and "at the pleasure" of the Mayor.

To be actionable as infringements on Fourteenth Amendment liberty interests, allegedly defamatory statements must first be found to have impugned the good name, reputation, honor, or integrity of the employee.  *Workman*, 32 F.3d at 480 (citing *Roth*, 408 U.S. at 573).  Second, the statements must be false.  *Id.* (citing *Codd v. Velger*, 429 U.S. 624, 628 (1977), *Flanagan,* 890 F.2d at 1571-72, and *Wulf v. City of Wichita*, 883 F.2d 842, 869 (10th Cir.1989)).  Third, the statements must occur in the course of terminating the employee or must foreclose other employment opportunities. *Id.*  Finally, the statements must be published. *Id.* (citing *Bishop v. Wood*, 426 U.S. 341, 348 (1976)).  These elements are not disjunctive; all must be satisfied to demonstrate deprivation of the liberty interest. *Id.* (citing *Melton v. City of Oklahoma City*, 928 F.2d 920 (10th Cir. en banc)(trial court erred in instructing jury to find either stigmatization or loss of employment opportunities), *cert. denied*, 502 U.S. 906 (1991)).  Once a liberty interest is implicated, the due process protections of the Fourteenth Amendment "are innervated" and plaintiff must demonstrate he was not afforded an adequate name-clearing hearing.  *Id.* at 480.

Here, the only published defamatory statements alleged are those of Amber Miller, the Mayor's press secretary, responding publicly to press inquiries on June 21, 2012 regarding McDonald's termination, that he was "fired because of 'serious allegations of misconduct,'" and Mayor Hancock's public confirmation the next day of "previous news media reports that McDonald was fired for serious misconduct." Am. Compl ¶ ¶ 56-57. These statements are neither "intimate" or "personal," nor can they be said to have been

14

false.  McDonald was a public employee whose termination was a matter – as the press

inquiries attest – of public interest.  *See Flanagan*, 890 F.2d at 1570-71 (unwilling to hold

that a reprimand of public employee is of a "highly personal" nature).  The facts being

communicated to the press, moreover, were true: McDonald *was* terminated because of

"allegations of serious misconduct."  *See Workman*, 32 F.3d at 481 (letter of reprimand

repeating the charge of sexual harassment and reprinting evidence disclosed in

investigation did not establish "falsity," even when officer was ultimately exonerated).  *See

also Melton*, 928 F.2d 920, 928 (10th Cir. 1991)(repetition of a third party's allegations is

not a false statement).

These failures alone doom McDonald's § 1983 claim.  Statements, made in response

to inquiries by the press, that a public employee and political appointee was terminated

based on allegations of "serious misconduct" cannot, without more, support a constitutional

liberty deprivation claim under 42 U.S.C. § 1983 or *Workman v. Jordan*.  Even assuming,

for the sake of argument, that the statements were defamatory and impacted McDonald's

tangible employment interests, McDonald still would have to allege facts sufficient to

demonstrate that he was denied an adequate name-clearing hearing.  This, too, he has failed

to do.

First, McDonald contends he was entitled to a name-clearing hearing *before* he was

terminated, relying ostensibly on *Workman* and the fact the plaintiff there was provided

such a hearing.  It is here the Court's determination that Captain Workman enjoyed a

constitutionally protected property interest in his continued employment, and my

determination that McDonald was an at-will employee without such an interest, become

salient and defeat his argument.  Were the facts in this case that McDonald could only be

fired for cause, then he may have been entitled to a pre-termination hearing or other formal

process related to Wise's allegations.  As it stands, it is not Wise's statements but

Hancock's and Miller's that inform the relevant inquiry, and the hearing of which

McDonald was or was not deprived would not have been a pre-termination hearing but one

held *after* Defendants made their allegedly defamatory statements to the press.[5]

With regard to that post-termination hearing, the City contends any due process

requirements were met on September 24, 2012, when McDonald appeared before the

Unemployment Commission and was permitted to address the sexual harassment

allegations, confront the evidence the City had garnered in their investigation, and present

testimony of his own.  I agree. According to McDonald, O'Malley testified at that hearing

and stated McDonald was fired "because he sexually harassed Wise." (Am. Compl. ¶ 74.)

The City presented as evidence the tape recordings of two telephone calls Wise had placed

to McDonald and secretly recorded, and the hearing officer admitted the tape recordings as

evidence, agreeing to listen to them before rendering his decision.  *Id.*  McDonald concedes

---

[5]     I note the allegedly defamatory statements for purposes of McDonald's § 1983 claim are
not Wise's sexual harassment allegations that informed his May 2012 termination, but the
statements Miller and Hancock made to the press a month afterwards in June 2012.  It is as to
those statements that McDonald would arguably have had the right to clear his name, and that
right, Defendants contend, was met by the unemployment hearing that took place in October 2012.

the hearing officer "provided McDonald an opportunity to explain the circumstances of his interactions with Wise" (Am. Compl. ¶ 75) and that he, in turn, testified under oath that he had not sexually harassed her. *Id.* On October 11, 2012, McDonald was "notified in writing" that he had prevailed on his appeal, with the hearing officer "writing the McDonald 'is not at fault for this separation [and that] the claimant and the officer had a close friendly relationship which was not romantic.'" *Id.* ¶ 76. Thus, based on McDonald's own allegations in his Complaint, the City contends its due process obligations were met.

McDonald does not deny the October unemployment hearing afforded him the opportunity to clear his name, he simply argues it was too late. According to McDonald, "the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner," and that in his case, this required a hearing "before he was fired and before false and defamatory information about him was distributed to the news media." Br. (Doc. 18) at 33-34 (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). I have already rejected the argument, premised on *Workman*, that McDonald was entitled to a pre-termination hearing because McDonald was an at-will political appointee with no property interest in continued employment. With regard to the assertion that McDonald's hearing before the Unemployment Commission was constitutionally inadequate, I reject that argument in this case. I decline to hold that in all cases where a name-clearing hearing is constitutionally mandated that an unemployment hearing will suffice, but find that McDonald's October 24 hearing before the Unemployment

17

Commission was adequate to meet any due process interest he may have established under the facts alleged in this case. *See Welling v. Owens State Comm. Coll.*, 535 F. Supp.2d 886, 890 (N.D. Ohio 2008)(hearing before unemployment commission functioned as adequate name-clearing hearing under Fourteenth Amendment).

McDonald fails to state a cognizable claim under 42 U.S.C. § 1983 for a deprivation of any "liberty/property interest" that could be made out on the facts alleged in his Amended Complaint.  For this reason, and for the reasons previously stated, Defendants' Motion to Dismiss (Doc. 14) is GRANTED and Plaintiff's claims, against each and every Defendant however named, are DISMISSED in their entirety.

Dated this 14th day of May, 2013, at Denver, Colorado.

**s/John L. Kane**
SENIOR U.S. DISTRICT JUDGE

18