IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-2996-JLK

WAYNE MCDONALD,

       Plaintiff,

v.

MICHAEL HANCOCK, in his official capacity as Mayor
and in his individual capacity, and
CITY AND COUNTY OF DENVER,

       Defendants.

_____

ORDER DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT/
JUDGMENT ON THE PLEADINGS
_____

KANE, J.

      This protracted wrongful termination dispute between the City and County of Denver and former mayoral appointee Wayne McDonald is before me on remand from the Tenth Circuit on a single deprivation of liberty interest claim under 42 U.S.C. § 1983.[1] McDonald alleges Denver Mayor Michael Hancock "knowingly made false statements about him to the public" when he confirmed to the press that McDonald had been terminated amid allegations of "serious misconduct." Am. Compl. (Doc. 77) at 2. Because

---

[1] McDonald's original Complaint included a § 1983 property interest claim and a claim for defamation against the co-worker whose sexual harassment allegations triggered the investigation that lead to McDonald's firing, but the Tenth Circuit affirmed my dismissal of the property interest claim and the defamation claim has since been settled.

that statement was true – allegations of misconduct had been leveled at McDonald by a coworker, an investigation was undertaken, and McDonald was terminated as a result – I dismissed McDonald's liberty interest claim based on McDonald's failure to allege facts sufficient to satisfy the "falsity" prong of the four-part test set forth in *Workman v. Jordan* for stating such a claim.  The Tenth Circuit reversed. Distinguishing between "the mere reporting" of a false claim made by someone against a public employee and the "adoption" of that claim as a basis for punitive action, the Court determined Mayor Hancock's statement to the press linking McDonald's termination to "allegations of serious misconduct" was sufficient to state a claim and trigger the right to a name-clearing hearing.  The Court also ruled, as a matter of law, that the post-termination unemployment compensation hearing afforded McDonald was not a constitutionally adequate name-clearing hearing.

On remand, McDonald invokes "the law of the case" to argue the Tenth Circuit's ruling is dispositive on the question of liability.  McDonald moves for judgment on the pleadings and a determination that the only issue left for trial is the nature and amount of damages. *See* Br. in Supp. of Pl.'s Mot. Jm. on the Pleadings (Doc. 89) at 5-6. Defendants contend the Tenth Circuit's analysis was conducted under a Rule 12(b)(6) pleading standard, and deny it relieves McDonald of his normal burden of marshaling facts sufficient to prove his claim by a preponderance of evidence.  Arguing the facts adduced in discovery fail under a Rule 56 standard to support McDonald's claim, Defendants

move for summary judgment (Doc. 92). I DENY both motions, addressing separately Defendants' related motion to strike the many substantive changes Plaintiff made to the deposition transcript submitted in support of his brief in opposition to the Motion for Summary Judgment (Doc. 110). This case will be set for a Pretrial Conference and trial setting.

*Discussion.*

The Supreme Court recognizes that a state may abridge a liberty interest if, in terminating or declining to renew an employment contract, it makes charges of dishonesty or immorality or imposes "a stigma or other disability that foreclosed [an employee's] freedom to take advantage of other employment opportunities." *Board of Regents v. Roth*, 408 U.S. 564, 573 (1972). The abridged interest may be remedied by affording the aggrieved employee an opportunity to clear his name. The failure to provide such an opportunity may entitle the employee to damages.

The Tenth Circuit delineates a four-part test that a plaintiff must satisfy to demonstrate a deprivation of liberty:

> First, to be actionable, the statements must impugn the good name, reputation, honor, or integrity of the employee. Second, the statements must be false. Third, the statements must occur in the course of terminating the employee [and] must foreclose other employment opportunities. And fourth, the statements must be published.

*Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir. 1994), *applied in Renaud v. Wyo. Dep't of Family Servs.*, 203 F.3d 723 (10th Cir. 2000) and *Melton v. City of Okla. City*, 928 F.2d

920 (10th Cir. 1991)(clarifying the timing and effect of the statements in the third *Workman* factor must exist in the conjunctive, rather than disjunctive as originally articulated in *Workman*).

In reversing my ruling that McDonald had failed to plead facts demonstrating the "falsity" prong of the *Workman* test, the Tenth Circuit rejected my determination that Mayor Hancock's statements could not have been "false" if McDonald really had been fired as he alleged, based on those allegations. The Court cited *Melton* to distinguish between "the mere reporting" of a false claim made by someone against a public employee and the "adoption" of that claim as a basis for punitive action. "Even if the Mayor only stated that Mr. McDonald was fired because of allegations of serious misconduct," the Court concluded, "his termination of Mr. McDonald due to the allegations gives the false impression that Mr. McDonald did in fact commit serious misconduct." Slip op. at 12 (citing *Melton*, 928 F.2d at 930). Given McDonald's further allegations that he has been unable to find employment "because of media reports of his misconduct," the Court concluded "McDonald has sufficiently pled a deprivation of his liberty interest" that should have triggered the right to a name-clearing hearing *Id.*

At issue is the preclusive effect of the Tenth Circuit's conclusions on appeal. Defendants focus on the Rule 12(b)(6) pleading standard the Court of Appeals applied to McDonald's allegations under the *Melton/Workman* liberty interest test to argue McDonald must now support those allegations with evidence sufficient to survive

4

summary judgment under Rule 56. Citing admissions made by McDonald in his deposition and elsewhere, Defendants contend he cannot. McDonald, on the other hand, argues the Mayor's admission that he made statements to the press confirming that allegations of "serious misconduct" had been made against McDonald and that he had been terminated as a result, satisfy the *Melton/Workman* standard as applied by the Tenth Circuit, entitling him to judgment as a matter of law.[2] I disagree on both counts.

The Tenth Circuit's conclusions were unequivocally based on a Rule 12(b)(6) pleading standard where McDonald's factual allegations were presumed true and all inferences from them construed in his favor. These inferences included the determination that being fired amid allegations of otherwise undisclosed "serious misconduct" was, in fact, stigmatizing, and that "media reports" about McDonald's termination were, in fact, attributable to the Mayor and did, in fact, foreclose McDonald's ability to find work. Based on the facts adduced in discovery, it is clear that contrary inferences are also possible.

A reasonable fact finder, for example, could find that the Mayor's confirmation of a statement that was factually true (allegations of misconduct *had*, in fact, been made)

---

[2] According to Mr. McDonald, Defendants' admission that the Mayor publicly linked McDonald's termination to allegations of "serious misconduct" disposes of the liability question because the circumstances triggered a right to a name-clearing hearing which, as the Tenth Circuit conclusively determined, was not provided. *See* Br. in Supp. of Pl.'s Mot. Jm. on the Pleadings (Doc. 89) at 5-6; *see also* 10/7/15 email from W. Sulton to T. Rice (Doc. 111-3)("given the Tenth Circuit's decision and defendants' subsequent admissions, I do not believe that there is any basis for defendants' [sic] to move for summary judgment . . . [t]his is a damages case").

was not, as a factual matter, stigmatizing. *See Melton*, 928 F.2d at 928 (statements of police department public relations officer to newspaper confirming that charges had been made and investigation of the officer was being undertaken were, in fact, true and were not stigmatizing). A jury may, in the context of trial, be persuaded that the use of the "serious misconduct" rubric is not stigmatizing when it comes to an at-will appointee in McDonald's position. Facts learned in the investigation leading up to McDonald's termination may support an inference that McDonald was terminated for "misconduct" wholly unrelated to the sexual harassment allegations reported in the media. The jury, moreover, may reject McDonald's contention that he has been unable to find employment, or that it was the Mayor's statement, rather than media reports sourced by his attorney, that have foreclosed his ability to do so. In short, the Tenth Circuit's ruling was simply that the Mayor's public confirmation, to the press, of the factually "true" statement that McDonald had been accused of "serious misconduct," done in the course of terminating him, supports an inference that the Mayor stigmatized McDonald sufficiently to foreclose his ability to find employment. Whether a fact finder will make those necessary inferences in McDonald's favor is a question for another day.

Because McDonald misapprehends the nature and impact of the Tenth Circuit's Rule 12(b)(6) rulings on appeal, I DENY his Motion for Judgment on the Pleadings (Doc. 88). I also DENY Defendants' Motion for Summary Judgment (Doc. 92), based on my determination that there are sufficient facts in the record from which to infer that the

Mayor's statements, made to the press in announcing McDonald's termination, created a sufficiently false and stigmatizing impression of misconduct that impacted his ability to find employment and triggered a right to a name-clearing hearing that he did not get. The parties' dispute, in other words, is for a jury to decide.

Because my summary judgment ruling does not turn on disputes of fact raised or manufactured through changes Mr. McDonald purported to make to his deposition transcript, I also DENY Defendants' Motion to Strike Deposition Changes (Doc. 110) as moot. I agree with Defendants' that McDonald's errata sheet is a gross deviation from the requirement that Rule 30(e) should be used sparingly to correct only non-material or clerical errors.[3] Rather than strike it, however, I will leave it intact where it may be used at trial for impeachment or any other appropriate purpose.

Accordingly, the Motions for Judgment on the Pleadings (Doc. 88), for Summary

---

[3] The errata sheet changes yes answers to nos and vice versa, altering the substance and meaning of answers to those that are sometimes diametric. For example, a question and answer on pages 63-64 of the deposition transcript originally read as follows:

**Q. (By Mr. Rice) Sure. Here's my point, if someone read this article and they were trying to find out what these allegations were about, and they came to the conclusions that the allegations concerned acts of sexual misconduct on your part, they would have gotten that from your lawyer, right?**

A. Correct.

In the errata sheet (Doc. 110-2), this answer was changed to reflect Mr. McDonald's "current recollection," which was:

A. No. News reporters contacted my lawyer to confirm statements by representatives of the City and County of Denver that I was fired because I sexually harassed a co-worker.

Judgment (Doc. 92) , and to Strike Deposition Changes (Doc. 110) are all DENIED.

Within the next two weeks – or on or before March 9, 2016 – the parties shall CONFER and call in jointly to chambers to set this matter for Pretrial Conference.

Dated this 29th, day of February, 2016, at Denver, Colorado.

                          *s/John L. Kane*
                          SENIOR U.S. DISTRICT JUDGE